Milligan, J.,
delivered the opinion of the Court.
This is a writ of error, prosecuted by the plaintiff in error, to reverse a judgment of $5,000, which had been taken against him by defendant, in the Circuit Court of Knox County, at its June Term, 1865. The facts necessary to be noticed, are as follows:
The action was trespass, commenced by summons with ancillary attachment, founded on an affidavit, which alleges, that “he (the plaintiff below) is advised, and believes, that he has good cause of action against the defendant herein named, in which he will be entitled to recover the sum of five thousand dollars, for which he has this day brought suit against *155 the said Samuel C. Swan, in the Circuit Court of Knox County. He further swears, that the defendant has absconded, or is absconding, or so conceals himself that the ordinary process of the law cannot be served upon him; he therefore prays that an ancillary attachment issue against the property of the defendant, in aid of his suit at law. The attachments, follow, substantially, the language of the affidavit. The summons and the first attachment issued on the 9 th of September, 1863, and both came to the hands of the Sheriff on the same day. The summons was returned the 15th of October, following, endorsed: ‘‘Search made, but the defendant not to be found in my county.” Prior to this, viz: Sept. 10, 1863, the attachment' was returned, endorsed: “Levied this attachment on a tract of land,” etc. An alias ancillary attachment is-N sued, on the 24th of April, 1865, which was returned, endorsed: “Levied on seven vats, containing leather; one bark mill,” etc. Afterwards, on the 25th of March, 1865, a phtries ancillary attachment issued, which came to the hands of the Sheriff the same day, and was also returned the same day received, endorsed: “Search made; no personal property to be found in my county; levied this attachment on a tract of land,” etc.
The declaration, although exceedingly inartificially drawn, is in substantial conformity to the requirements of the Code. The damages' are laid at $5,000, and claimed for “falsely, maliciously, and illegally arresting and imprisoning the defendant in error, or causing him to be imprisoned, and imprisoning him for two months.” *156 No plea appears to have been filed, or appearance entered by the defendant below.
Under this state of facts, at the June Term of the Circuit Court of Knox County, 1865, a judgment, by default, was regularly taken against the plaintiff in error, and thereupon a writ of inquiry was awarded, and a jury empanneled- to inquire of the damages, who, by their verdict, assessed the same at $5,000, for which judgment final, was entered.
Various questions are presented in argument, and pressed with zeal and ability on both sides. But this case, as perhaps some others of the same class, must turn upon the construction which is to be given to the attachment laws, as they now exist in the State.
The question that meets us at the very threshold of this investigation, is, the effect that is to be given to the ancillary attachment, issued and levied on the property of the defendant below. Were they sufficient, after levy, return and publication, to bring the party before the Court, without personal service?
The attachment laws as they existed prior to the ratification of the amendment to the Constitution, on the 22d of February, 1865, did not authorize the sue-ing out of an attachment, as on original process, for any cause of action ex-delicto. In such cases, under the Act of 1843, ch. 29, a subsidiary attachment might be resorted to as an auxiliary to an action for tort, as well as upon contract; and the Code, although it has not, in terms, re-enacted the Act of 1843, has abridged, in cases of attachment, none of the rights conferred by that Statute. By the terms of the Code, *157 sec. 3462, this process may be resorted to “in aid of a suit already brought;” and its remedial operation and effect is rather extended than restricted. Under the Act of 1843, as well as under the provisions of the' Code, it could only be resorted to when the action was brought in the ordinary mode; and its effect was not to bring the party before the Court, but to create a lien on the defendant’s property, and hold it bound for the satisfaction of the recovery.
In such cases, it can only lawfully issue as a subsidiary, or ancillary process, as this Court has declared, “when it appears on the affidavit, and is alleged in thé attachment, that a suit had been commenced by the plaintiff against the defendant; the nature thereof; the tribunal in which it is pending; the amount of damages laid in the action; and that the cause of action is just:” Thompson vs. Carper, 11 Hum., 544; Morris vs. Davis, 4 Sneed, 453.
These are necessary prerequisites to the lawful issuance of an ancillary attachment in aid of a suit at law, and their presence in the affidavit and attachment, constitute a good title to real or personal estate sold under it. — lb.
But, in causes of action ex-contractu, whether the debt or demand is due or not, if the plaintiff resides in the State, an attachment, as an original process, will lie. But, if the debtor, or defendant, resides out of the State, and the debt or. demand is not due, the remedy by an original attachment cannot be maintained: Code, secs. 3455, 3458. Under these broad and comprehensive sections of the Code, any creditor may *158 have the writ, whether he is a natural person or a corporation; and if there are two or more debtors, he may commence his action against one or more, by summons, and against the others by original attachment: Sims vs. McNeil, 10 Hum., 500. In all these cases for debt, or demand, causes of action ex-con-tractu, when the relation, express or implied, of debtor and creditor, exists, an attachment, as an original process, will lie; and a proper levy and return, with publication, is sufficient to confer on the Court jurisdiction-of the cause, and authorize it to proceed to final judgment, as if the defendant was in Court by personal service: Code, sec. 3524.
In causes of action, in form eos-eontractu, where the leading process is attachment, it is obvious that the mean, or ancillary attachment, was- not contemplated. It would be, if issued, wholly inoperative. The original attachment accomplishes everything that possibly could be effected by it. In such cases, it is only effective ■when the suit is brought by summons; and its object and purpose is precisely the same as in cases of action of tort, when the suit must, of necessity, be brought by summons. It is, thererfore, apparent, that the ancillary attachments in actions, both in form ex-contractu and ex-delicto, is subsidiary, or mean process, and not operative to bring the party before the Court.
■ Thus the law stood until the ratification of the amendment to the Constitution, in 1865. The Schedule appended to the constitutional amendments, effected a most material and important change in the attachment laws, and introduced a new feature hitherto un *159 known to the laws of this ■ State. By the 4th section,, which "by its own terms has the force and effect of law, it is provided, among other things, that, “In all actions for torts, brought, or which may hereafter be brought, in the Courts in this State, by attachments levied upon the property of the defendant, the -Court shall have power to proceed to judgment and collection of the same, as upon contracts, without personal service of process upon the defendant, until the Legislature-shall see fit to change the law in such cases.”
The language of this part of the Schedule, although not explicit, and apparently employed without a clear comprehension of the existing state of the attachment laws, is, nevertheless, sufficient to convey, with reasonable certainty, the purpose of its framers.
The intention appears to have been two fold: First,, to confer the same right of action, by original attachment, in causes ex-deHcto, that then existed, by law,, •in causes ex-contractu; and, second, to uphold and sustain such actions for torts, as had already been brought in the ordinary mode, with ancillary attachments lawfully issued, and levied on the property of the defendant. "Without such construction, the words, “all actions for torts brought,” would have no meaning. This phrase, when coupled, as by every rule of grammatical construction it must be, with the words following in the same sentence, “by attachment levied upon the property of the defendant,” leaves but little room to doubt, that it was the intention of the Convention to give to the ancillary attachment, when lawfully issued, and duly levied on the property of the defendant, in actions for. *160 torts then brought, the operation and effect of an original attachment. In actions in form ex delicto, no other hind of attachment, as the law then existed, could issue, and that only in cases simultaneously with, or after, summons; and consequently, none other could be legally levied on the property of the defendant.
This view of the meaning of the Schedule, sustains the words, “in all actions for torts brought,” without which they are utterly nugatory. The construction, thus given, we are aware, is a liberal one, but not, perhaps, more so than is justified by the former adjudications of this Court, and the plain requirements -of the provisions of the Code, sec. 3477; Kunyan vs. Morgan, 7 Hum,, 210; Fisher & Co. vs. Cummings, 7 Hum., 232.
It is proper, however, to remark, that the reason that superinduced that part of the Schedule, which gives to the ancillary attachment the operation and effect of an original attachment, passes away with the suits then brought; and such a practice now would be irregular, and not to be encouraged.
Applying this construction of the Schedule to the facts of this case, we hold, that, although the affidavit and the recitals in the attachments are not in strict conformity to the rules laid down, they substantially meet the requirements of the .law, and the ancillary attachments lawfully issued. The levies of the alias and pluries attachments, (without giving an opinion as to the return on the first attachment,) and the officer’s return thereon, are regular, and after publication, had the operation and effect to bring the de *161 fendant, in legal contemplation, before tbe Court, and conferred the jurisdiction necessary to authorize it to proceed to final judgment.
In this view of the case, the plaintiff was not bound to resort to an “alias” or “pluries” summons, or judicial attachment, as provided by the Code, secs. 3466 and 3468. The ancillary attachment, which lawfully issued in aid of this suit, brought by summons, had the same operation and effect as if the action had been brought by an original attachment.
Admitting this construction of the attachment laws, it is insisted that the Circuit Judge erred, in not staying the final judgment, as provided by the Code, sec. 3527. The language of this section is; “When the defendant does not appear, the Court may, and the Justice shall, stay final judgment or decree, not exceeding twelve, nor less than six months, from the time of the return.”
By the law, as it formerly existed, the Court was to “stay all proceedings” from six to twelve months, when the attachment was against a non-resident; Car. & Nic., 105. No judgment, whether interlocutory or final, could be had. And this stay is still allowed by sec. 3528 of the Code, when the defendant is a nonresident, unless sufficient cause appear to the contrary. In Other cases, the Court hearing the cause, may exercise a sound discretion, and refuse the stay, or not, as it may think the circumstances justify. The Statute is not peremptory as to the action of the Court, and the legal presumption is, that, in refusing the stay, it decided correctly. But this, like all other presumptions, *162 may be rebutted; but in the absence of all countervailing facts and circumstances in the record, this Court would not feel satisfied in disturbing the judgment for that cause.
It is further assigned as error, that the attachment was' not dated on the day of its issuance, 4s required by the form prescribed in the Code, sec. 3474, and that it was improperly tested of the June Term, 1865. The section referred to, (3474,) is,, by its own terms, merely directory, and a substantial conformity to its provisions, is all that is required.
The attachment does not appear to be dated at the foot of the process,, as was proper, of the day of its issuance, but it is tested of the former Term. This attestation may be rejected as surplusage, and still enough appears to hold it valid. The date upon which it issued is indorsed upon the back of the paper; and we think, under the liberal construction that is to be given to proceedings in attachment, that is sufficient: Code, sec. 3477.
There is no error in the record; and we affirm the judgment.